# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSELIND QUAIR and CHARLOTTE BERNA, | 1:02cv5891 REC DLB |
| | |
| Petitioners, | ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTION REGARDING DISCOVERY DISPUTES |
| v. | (Document 174) |
| DENA BEGA, et al., | |
| Respondents. | |

On March 29, 2005, the parties filed the instant motion to resolve discovery disputes. The motion was heard on April 22, 2005, before the Honorable Dennis L. Beck.  Laurie L. Quigley and Kirsten Zumwalt appeared on behalf of Respondents.  Robert Rhoan, Patrick Guillory and Leah Castella appeared on behalf of Petitioners.

## BACKGROUND

This action arises out of the June 1, 2000, disenrollment and banishment of Petitioners Roselind Quair and Charlotte Berna ("Petitioners") from the Santa Rosa Rancheria Tachi-Yokut Tribe ("Tribe").  On February 3, 2003, Petitioners, pursuant to Section 1303 of the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq., ("ICRA"), filed amended petitions for writ of habeas corpus.  Petitioners allege that because the proceedings which resulted in their disenrollment as

1

1   members of the Tribe and banishment from the Tribe's Rancheria were in violation of their rights
2   guaranteed under ICRA, these actions constituted an unlawful detention and restraint of liberty.

3       On July 26, 2004, the Honorable Robert E. Coyle denied in part and granted in part the
4   parties' cross-motions for summary judgment.  Pursuant to the order, the issues remaining in this
5   action are: (1) whether Petitioners were denied due process; and (2) whether Petitioners were
6   denied a fair trial.

7       In August 2004, Petitioners filed a motion to reopen discovery.  A hearing was held on
8   September 24, 2004, before the Honorable Dennis L. Beck.  Judge Beck deferred ruling on the
9   motion pending the outcome of a re-hearing held by the Tribe on Petitioners' disenrollment and
10  banishment.  A re-hearing was held on October 1, 2004, and the Tribe again voted to disenroll
11  and banish Petitioners.

12      On October 29, 2004, Judge Beck held a scheduling conference to consider Petitioners'
13  request to re-open discovery.  On December 22, 2004, Judge Beck issued an Amended
14  Scheduling Order allowing the re-opening of discovery.

15      Pursuant to the Amended Scheduling Order, Petitioners propounded Requests for
16  Interrogatories, Set No. Four, and Requests for Production of Documents, Set No. Three.  The
17  instant motion concerns issues raised by Respondents' responses to this discovery.

18                                    DISCUSSION
19  A.   Legal Standard
20      Federal Rule of Civil Procedure 26(b)(1) provides:

21      **1) In General.** Parties may obtain discovery regarding any matter, not privileged,
        that is relevant to the claim or defense of any party, including the existence,
22      description, nature, custody, condition, and location of any books, documents, or
        other tangible things and the identity and location of persons having knowledge of
23      any discoverable matter. For good cause, the court may order discovery of any
        matter relevant to the subject matter involved in the action. Relevant information
24      need not be admissible at the trial if the discovery appears reasonably calculated
        to lead to the discovery of admissible evidence. All discovery is subject to the
25      limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).

26

27  Fed.R.Civ.Proc. 26(b)(1).

28

B.    Discovery At Issue

_____The parties identify eight issues for which they require the Court's direction.  Not all issues are related to specific interrogatories and/or requests for production of documents. Therefore, the Court will address the issues as the parties identified them, rather than numbered discovery requests.

1.    Information Regarding Voting Records of Tribal Members

Petitioners contend that this information is relevant to ensure that there were a significant number of votes to disenroll and banish Petitioners, that those votes came from eligible members, and that no eligible member voted more than once.  Respondents contend that on October 1, 2004, the General Council conducted the vote by secret ballot, and they intended to keep the vote secret.  Respondents also point out that Petitioners have been given ample information to verify the voting process- sign in sheets for the meetings where votes were taken, minutes of those meetings, and copies of the ballots from the October 1, 2004 re-hearing.

During the hearing, Respondents indicated that they do not have information regarding how each member voted.  Such information, in any event, is not discoverable.  The votes were taken by secret ballot, and forcing individuals to disclose the nature of their vote would implicate substantial privacy concerns.  As Respondents have indicated that they have produced the information available to them, Respondents will not be required to provide further information

Insofar as Petitioners wish to ask deponents about how they voted, they may do so. However, Petitioners must first tell the deponent that this Court has determined that it is their right *not* to disclose such information.  After being apprised of this Court's determination, the deponent will not be prevented from discussing how they voted, if he or she choose to do so.

2.    Identity of All Tribal Members Who Requested that Petitioners Be Banished and Disenrolled

Petitioners contend that this information is necessary so that they may confront their accusers, test the veracity of the motives of the accusers, determine whether accusers were part of the body that evaluated whether they should be banished and disenrolled, and explore whether personal animosity, personal interest or bias impacted that individual's decision and/or the

decision of other individuals. Respondents argue that it would be unduly burdensome to interview each member of the Tribe to establish if they requested that the General Council banish and/or disenroll Petitioners.

Respondents have provided the General Council meeting minutes. To the extent that tribal members made a formal request to the Tribal Council, or made a request in a meeting for which there are minutes, such information is discoverable and should be produced if it is available to Respondents and has not already been produced. The grounds for the request is also discoverable. Requests for banishment and/or disenrollment not falling into one of these two categories is not discoverable.

3.    Unredacted Records of Meetings Where Petitioners' Banishment was Discussed

Petitioners contend that this information is necessary to determine if individuals who attended and voted at the re-hearing had engaged in any conduct, either at that hearing or in the earlier proceeding, that evidenced bias, prejudgment, or animosity towards Petitioners.

Respondents have provided Petitioners with all meeting minutes of General Council meetings during which Petitioners' disenrollment and banishment was discussed that are in Respondents' custody and control. Respondents redacted the "executive session" of the October 1, 2004, re-hearing because the session related to the deliberation which took place outside the presence of tribal members. If Petitioners question whether material was properly redacted, they may resort to in camera review.

Information beyond this is not relevant and therefore not discoverable. Petitioners' argument that the unredacted minutes will reveal the "nature and tone" of the meetings and the general sentiments of the individuals in attendance is unpersuasive.

4.    The Identity of All Individuals Who Have Been Disenrolled and Banished Since 2000

Petitioners' Interrogatory No. 17 requests this information since 1994, and Request for Document Nos. 7-9 asks for documents related to this issue. Respondents provided information for those individuals who were disenrolled and banished prior to 2000, but did not provide information for individuals banished and disenrolled since 2000.

Petitioners contend that this information is relevant to determine if any decision makers were under duress (i.e., if any member who voted for Petitioners was subsequently disenrolled and banished) and whether the punishment was proportionate to the crime, both issues which they contend are necessary to determine whether Petitioners' received due process.  Respondents contend that the names of individuals who have been disenrolled and banished since 2000 are not relevant, and point out that the membership files of these individuals contain personal information.

Respondents shall identify the grounds for which tribal members where disenrolled and/or disenrolled and banished since 2000.  The names of these individuals, and any other personal information appears to be irrelevant.

5.      Range of Punishments Available to Respondents

Petitioners request this information in Interrogatory No. 6.  Respondents responded by stating that the General Council is empowered to "impose any lawful sanction which it deems appropriate."

Petitioners contend that because due process requires that the punishment not be out of synch with the crime, this information is necessary to their claim.  Respondents contend that their response is the only response that they can provide and no further response is possible.

Based on the response given, and Respondents' explanation that the Tribe can impose any lawful sanction it deems appropriate, the Court finds that Respondents have already answered the interrogatory and that no further response is necessary.

6.      Tribe's Five Year Business Plan, Revenue Allocation Plans, and Deposition
         Questions Regarding Per Capita Distribution

In Interrogatory No. 13, Petitioners request procedures for the calculation of pro rata distribution of all Tribal benefits.  Respondents stated that "[t]he Tribe provides payments to qualified members from the revenues of its gaming operation in accordance with IGRA, the revenue allocation plan, and the Tribe's operative 5 year business plan."  In response to the companion document request, Request No. 13, Respondents stated that the documents were irrelevant.

Petitioners contend that if any member of the General Council has any pecuniary interest in the outcome of Petitioners' disenrollment and banishment, the integrity of the entire body is compromised.  Respondents argue that the financial information is not relevant and is proprietary.

At the hearing, the Court agreed with Petitioners that such information is necessary to test Respondents' position that the per capita distribution does not increase when the tribal membership decreases, but explained that it is sensitive to disclosing more financial information than is absolutely necessary.  The Court ordered the parties to meet and confer to discuss whether or not the requested documents can be appropriately redacted to address privacy concerns but still provide sufficient information regarding the formula for the per capita distributions.

> 7.      Identities of Individuals Who Have Been Recalled from the Tribal Council Since January 1, 1998, and Circumstances Under Which they were Recalled and Documents Related Thereto

Petitioners request this information through Interrogatory No. 18 and request relevant documents through Request for Production No. 14.  Respondents refused to provide this information.

Petitioners contend that this information is relevant because it bears directly on whether the Tribe was capable of providing Petitioners with due process due to bias.  Petitioners explain that Ms. Berna was involved in efforts to recall Tribal Council members from their position in 1998, and contend that these individuals, and those allied with them, participated in their banishment and disenrollment.  Respondents argue that such information is not relevant, is outside Respondents' custody and control, and is private.

The identify of the individuals recalled since January 1, 1998, and when they were recalled, is relevant and shall be disclosed.  The circumstances of the recalls and documents related to the recalls, however, are not relevant.

> 8.      Scope of Respondents' Search

Finally, Petitioners request that this Court define the proper scope of Respondents' search for relevant and responsive information.

Respondents indicated that they have searched their documents and the Tribal Council documents.  This appears to be an appropriate search and the Court will not order Respondents to broaden the scope of their search.

IT IS SO ORDERED.

**Dated:**    **May 3, 2005**                                  _____/s/ Dennis L. Beck_____
3b142a                                              UNITED STATES MAGISTRATE JUDGE