UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSELIND QUAIR and CHARLOTTE BERNA,<br><br>                    Petitioners,<br><br>   v.<br><br>DENA BEGA, et al.,<br><br>                    Respondents. | 1:02cv5891 REC DLB<br><br>ORDER GRANTING RESPONDENTS' MOTION TO COMPEL<br><br>ORDER DENYING PETITIONERS' MOTION FOR PROTECTIVE ORDER<br><br>(Documents 194, 200) |

On July 26, 2005, Respondents filed a motion to compel and on August 2, 2005, Petitioners filed a motion for protective order. The motions were heard on September 30, 2005, before the Honorable Dennis L. Beck. Laurie L. Quigley, Kirsten Zumwalt and Val Saldana appeared on behalf of Respondents. Melissa Brown, Patrick Guillory, and Robert Rhoan appeared on behalf of Petitioners.

**BACKGROUND**

This action arises out of the June 1, 2000, disenrollment and banishment of Petitioners Roselind Quair and Charlotte Berna ("Petitioners") from the Santa Rosa Rancheria Tachi-Yokut Tribe ("Tribe"). On February 3, 2003, Petitioners, pursuant to Section 1303 of the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq., ("ICRA"), filed amended petitions for writ of habeas corpus. Petitioners allege that because the proceedings which resulted in their disenrollment as

members of the Tribe and banishment from the Tribe's Rancheria were in violation of their rights guaranteed under ICRA, these actions constituted an unlawful detention and restraint of liberty.

On July 26, 2004, the Honorable Robert E. Coyle denied in part and granted in part the parties' cross-motions for summary judgment.  Pursuant to the order, the issues remaining in this action are: (1) whether Petitioners were denied due process; and (2) whether Petitioners were denied a fair trial.

On July 14, 2005, the Court issued an order granting Respondents' motion to compel responses to interrogatories requesting the identities of certain witnesses.  The Court ordered Petitioners to provide supplemental responses, including the identity of the requested witnesses, within ten days of the date of service of the order.  If Petitioners failed to provide supplemental responses, the Court explained that they would be limited at trial to the information contained in their prior responses.

Petitioners did not provide supplemental responses with the identities of the witnesses. On July 26, 2005, Respondents filed a motion to compel deponents Roselind Quair and Charlotte Berna (deposed on June 28 and July 13, 2005) to answer deposition questions relating to the identity of witnesses.[1]

On August 2, 2005, the parties submitted their joint statement pursuant to Local Rule 37-251.  Also on August 2, 2005, Petitioners filed a motion for protective order and asked the Court to enter an outside-attorney eyes only protective order to protect the identities of witnesses who fear retaliation.

On August 5, 2005, the Court held a hearing on Respondents' motion to compel and Petitioners' request for a protective order.  The Court explained that Petitioners failed to provide any evidence to support a determination the unidentified witnesses had a reasonable fear of a credible threat.  The Court continued Petitioners' motion and allowed Petitioners to submit further evidence.

---

[1] Because of changes Petitioner Berna made to her deposition transcripts, the parties have stipulated to a further deposition.

On September 27, 2005, the parties submitted their supplemental joint statement. As Respondents' motion to compel has been fully briefed, the supplemental joint statement addresses only Petitioners' additional evidence in support of a protective order.

**DISCUSSION**

A.  Discovery at Issue

Respondents explain that during Petitioners' depositions, they either (1) declined to identify witnesses and instead identified the witnesses by number; or (2) declined to respond to certain questions because an answer could lead to the identity of a witness.[2] The topics at issue are as follows:

1.  The identities of any person who has intimidated/threatened a member of the General Council regarding the banishment/disenrollment of Petitioners.

2.  The identifies of any member of the General Council that has been intimidated/threatened regarding the banishment/disenrollment of Petitioners.

3.  The nature of the threatening/intimidating acts to a member of the General Council regarding the banishment/disenrollment of Petitioners.

4.  The nature of the retribution feared by any member of the General Council who has been intimidated/threatened regarding the banishment/disenrollment of Petitioners.

5.  The identify of all persons who Petitioners refused to reveal on the basis of witness anonymity, including those persons who deterred Petitioners from attending General Council Meetings.

---

[2] During depositions, Respondents, knowing that Petitioners would not be allowed to identify witnesses by name, suggested that Petitioners make a list of witnesses so that Respondents could ask specific information about the witness. Petitioners' counsel agreed to this system and agreed that Petitioners could answer questions to the extent they could do so without revealing identifying information (jobs, family, etc.). Joint Statement, 4-5.

Petitioner Berna listed eleven witnesses and Petitioner Quair listed five witnesses.

B.      Petitioners' Motion for Protective Order

Petitioners seek an outside-attorneys eyes only protective order preventing the disclosure of the identities and addresses of potential witnesses who fear retaliation, threats and intimidation should they show support for Petitioners.  The proposed protective order is broader, seeking to conceal (1) the identity of any person that has threatened a member of the General Council with regard to the banishment and/or disenrollment of Petitioners; (2) the identity of any member of the General Council that has been intimidated/threatened with regard to the banishment and/or disenrollment of Petitioners; (3) the nature of the threatening/intimidating acts to a member of the General Council with regard to the banishment and/or disenrollment of Petitioners; and (4) the nature of the retribution feared by any member of the General Council that has been intimidated/threatened with regard to the banishment and/or disenrollment of Petitioners.

        1.      Legal Standard

Petitioners request a protective order pursuant to Federal Rule of Civil Procedure 26(c), which provides:

> Upon the motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .

Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery.  Fed.R.Civ.P. 26(c), Advisory Comm.  Notes (1970); United States v.  CBS, Inc., 666 F.2d.  364, 368-369 (9th Cir.  1982).  In determining whether good cause exits for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and non parties.  In re Coordinated Pretrial Proceedings, 669 F.2d 620, 623 (10th Cir.  1982); see also Wood v.  McEwen, 644 F.2d 797, 801-801 (9th Cir.  1981).

        2.      Analysis

At the prior hearing on Petitioners' request for a protective order, the Court determined that Petitioners had not presented  evidence to allow the Court to make a decision and continued

the hearing to allow Petitioners to gather and present additional evidence. The Court explained that in order to enter the requested protective order, the Court would need to be convinced, by way of credible evidence, that a reasonable fear of a credible threat existed and the witness was therefore dissuaded from voting in support of Petitioners. The Court further explained that it would need to be satisfied that a proper balance was struck between allowing Respondents access to investigate the claims and protecting the witnesses' identities. As to the required evidence, the Court indicated that Petitioners would need to provide evidence of the intimidator, the intimidatee, the threat and the context in which it was said, including when, and whether the speaker had the power to carry out the threat.

In response to this directive and in their attempt to demonstrate good cause, Petitioners submitted seven declarations. For the reasons discussed below, however, Petitioners have not met their burden to justify the issuance of the requested protective order.

Of the submitted declarations, two are from Petitioners and three are from non-tribal members (two of whom do not seek to have their identities protected). Unfortunately, Petitioners' declarations offer nothing new and the declarations of the non-tribal members cannot provide the Court with the requested evidence because non-tribal members are not entitled to vote and therefore couldn't have been prevented from supporting Petitioners through threats or intimidation.

This leaves two declarations from tribal members. At most, however, these declarations describe heated verbal exchanges between members but do not include any evidence of specific, credible threats. Indeed, one declaration states, "word was spread" that if any General Council member supported the re-enrollment of Petitioners, they would be put up for disenrollment by a vote of the General Council. This evidences a rumor, at best, of an action that could only result in disenrollment/banishment if acted upon my a majority of the General Council. Even though the tribe is small in numbers, the speaker could not have, alone, imposed banishment/ disenrollment.

In support of their motion, Petitioners cite <u>Doe v. Advanced Textile</u>, 214 F.3d 1058, 1068 (9th Cir. 2000), where the court held that "a party may preserve his or her anonymity in judicial

proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." The court set forth the factors that should be used in determining whether a party needs to proceed anonymously: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. However, Doe can be distinguished on many levels- it dealt with *party* anonymity rather than witness anonymity, the request was made during the pleading stage and the ruling was limited thereto, and the evidence in support of the protective order was clear. Unlike protecting the parties' identities during the pleading stage, Petitioners seek to conceal the identities of critical *trial* witnesses. Petitioners' requested order would also effectively prevent Respondents from conducting meaningful investigation of Petitioners' claims, a remedy that is far more extreme than the remedy granted in Doe. Indeed, the requested order would prevent Respondents from discussing the allegations with their client and would leave Respondents with nothing more than a general denial in the face of Petitioners' specific allegations, a result not contemplated by Doe. Given the critical nature of the witnesses' testimony, due process requires that they be subject to cross-examination.

Petitioners also cite Auscape Int'l v. Nat'l Geographic Soc'y, 2002 WL 31250727, *3 (S.D.N.Y. Oct. 8, 2002), where the court ruled that the name and position of defendant's employee who advised plaintiff of defendant's so-called "black list" was discoverable, subject to a protective order. Again, this case is distinguishable. The protected witness was merely the person who tipped plaintiff off to the existence of a "black-list" and not a trial witness. Here Petitioners request the anonymity of the witnesses at the very core of Petitioners' case. Petitioners contend that they cannot receive a fair trial and will likely rely upon the testimony of these witnesses to prove their claims. While the Court recognizes the importance of these witnesses to Petitioners' claims, Petitioners have simply not met their burden so as o justify the imposition of such an extreme protective order. Accordingly, Petitioners' motion for a protective order is DENIED.

///

///

C. <u>Respondents' Motion to Compel</u>

    1.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides:

> **1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).

Fed.R.Civ.Proc. 26(b)(1).

    2.    Analysis

By way of its July 14, 2005, order, the Court determined that the discovery at issue is relevant. Accordingly, Respondents' motion to compel is GRANTED. The Court recognizes that Petitioners may not want to reveal the witnesses' identities, etc., and this is an option that they may choose. However, if Petitioners do not provide the requested information, they will be barred from present the witnesses at trial. In other words, Petitioners must either answer the deposition questions or forgo the evidence.

    IT IS SO ORDERED.

**Dated:**   October 12, 2005                    **/s/ Dennis L. Beck**
3b142a                                      UNITED STATES MAGISTRATE JUDGE